IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **00-cv-1282-JLK**

**THE PERSONNEL DEPARTMENT, INC.,**

    Plaintiff,

v.

**PROFESSIONAL STAFF LEASING CORPORATION**, a Maryland corporation, and **BALA RAMAMOORTHY**, an individual,

    Defendants.

_____

ORDER ON POST-TRIAL MOTIONS
_____

KANE, J.

    This rancorous business dispute was tried to a jury of 12 in August 2005. After seven days of trial, the jury reached its verdict awarding Plaintiff a total of $2,569,682 in actual damages jointly and severally against ProLease and ProLease President Bala Ramamoorthy, and $1,812,500 in punitive damages against Ramamoorthy personally. Judgment on the jury's verdict was entered two days later, on August 25, 2005. Immediately replacing their longtime trial counsel with counsel from a national Washington-based law firm, ProLease and Ramamoorthy filed a series of post-trial motions challenging the verdict and seeking judgment as a matter of law or, alternatively, a new trial.

    Having reviewed those Motions, their attendant briefing and the arguments and

legal authority set forth in them, I find oral argument to be unnecessary and issue the following rulings on the briefs:

1. **Defendants' Rule 50(b) Post-Verdict Motion for Judgment as a Matter of Law** (Doc. 276, filed 9/9/2005). Through their new counsel, Defendants ProLease and Ramamoorthy move for judgment notwithstanding the jury's verdict under Fed. R. Civ. P. Rule 50(b), arguing (1) there was "no" evidence ProLease "'intentionally'" interfered with PDI's prospective business or contractual relations; and (2) that the "only sustainable conclusion" to be drawn from the evidence at trial was that any intentional interference of Defendants was "'privileged'" as a matter of law. *See* Defs.' Reply in Support of Mot. J. Matter of Law (Doc. 293-1) at 1. PDI denies the evidence was insufficient on either ground, but contends the Motion is improper under Rule 50(b) in any event. Specifically, PDI contends Defendants waived their right to challenge the sufficiency of the "intent" evidence offered at trial by failing to renew their motion for judgment as a matter of law, originally made at the close of their case in chief, once all the evidence was in. It is "well established," PDI argues, "that failure to renew the motion for judgment at the close of all evidence 'bars consideration of a later motion for judgment n.o.v.'" Pl's Opposition to Mot. J. Matter of Law at 2 (quoting *Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1455 (10th Cir. 1987)). Because Defendants never moved in the first instance for judgment as a matter of law on their affirmative defense of privilege, PDI contends no "renewed" motion

for judgment after trial under Rule 50(b) will lie.

The 1991 amendments to Rule 50 changed the rule's terminology from motions for "directed verdicts" and for "judgment notwithstanding the verdict" under paragraphs (a) and (b) respectively to successive motions for "judgment as a matter of law." As amended, paragraph (a) of Rule 50 governs requests for "Judgment as a Matter of Law" *before* a case is submitted to a jury and paragraph (b) governs the "Renewing of [a] Motion for Judgment After Trial." *See generally* 9A Wright & Miller, Federal Practice and Procedure: Civil 2d § 2537. Even before the terminology change highlighting the "renewal" aspect of a motion under Rule 50(b), it was well settled in this Circuit that a post-verdict motion for judgment as a matter of law under Rule 50(b) had to be predicated by a Rule 50(a) motion for directed verdict at the close of the evidence. *See Trotter v. Todd*, 719 F.2d 346, 350 (10th Cir. 1983)(applying the concept when motions were known as motions for judgment n.o.v. and for directed verdict under Rule 50) *and Karns*, 817 F.2d at 1455.

Because the requirement is "'harsh,'" however, courts have taken a liberal view of Rule 50(a) motions such that they "should not be read narrowly so as to penalize the client but rather should be read in light of the purpose of the Federal Rules to 'secure a just, speedy, and inexpensive determination of every action.'" Wright & Miller, *supra* § 2537 at 340, n. 7 (quoting *Mosley v. Cia. Mar. Adra S.A.*, 362 F.2d 118, 121-22 (2d Cir.1966), *cert. denied*, 385 U.S. 933(1966)). The

Tenth Circuit, in *Anderson v. United Telephone Co. of Kansas*, 933 F.2d 1500, 1503 (10th Cir.1991)), has favored the liberal approach.

Taking this approach here, I conclude Defendants preserved their right to post-verdict review of the evidentiary sufficiency of the "intent" element of Plaintiff's claim, but waived any challenge to the jury's findings related to their privilege defense by failing to raise that issue at all under Rule 50(a). My conclusion regarding the challenge to the sufficiency of the jury's "intent" determination is not particularly availing, however, as Defendants' position clearly turns on my (and Judge Chasanow's) purportedly "erroneous" legal interpretation of Restatement (Second) Torts § 766B rather than an evidentiary insufficiency under the legal standard applied.

The interpretation of § 766B urged by Defendants' new counsel – that specific "knowledge" of the specific prospective business contract sought to be thwarted is a necessary element of a claim for tortious interference under § 766B – was raised by Defendants' trial counsel in the jury instructions process and on summary judgment and was rejected. My Instruction 3.2 and related Instructions 3.3 and 3.4 were premised on § 766B comment c, identifying the types of prospective relations protected against tortious interference, and § 767, specifying the factors to be considered under both §§ 766 *and* 766B in determining whether an action is "improper" and the generally consistent approach of Judge Nottingham in *Nobody in Particular Presents, Inc. v. Clear Channel*

*Communications, Inc.*, 311 F. Supp.2d 1048, 1119 (D. Colo. 2004) and the Colorado cases cited therein. Any erroneous reference by Judge Nottingham to "§ 767 cmt. q" is immaterial to the question of whether knowledge of a specific and identifiable business relationship is a necessary element of any claim under § 766B. I have held it is not, and Defendants' contrary assertion must be taken up with the Tenth Circuit.

Defendants' Motion for Judgment as a Matter of Law (Doc. 276) is DENIED.

2. **Defendants' Motion for New Trial and Remittitur**. (Doc. 275, filed 9/9/2005).

In the alternative, Defendants move for new trial under Fed. R. Civ. P. Rule 59 on grounds that (1) the verdict – and in particular the jury's findings on the issues of intent, privilege/bad faith and the amount of actual and punitive damages – was against the "clear weight" of the evidence, and (2) procedural errors during trial deprived Defendants of a fair opportunity to present their case. Alternatively, Defendants seek remittitur of the damages awarded. I address Defendants' contentions *seriatim*.

### *a. The jury's verdict was supported by the evidence.*

The standard for obtaining a new trial on the ground that the verdict was not supported by the evidence is high. The inquiry focuses on whether the jury's verdict is "clearly, decidedly, or overwhelmingly against the weight of the evidence." *Black v. Hieb's Enter., Inc.*, 805 F.2d 360, 363 (10th Cir. 1986)(citing

numerous cases). The jury's verdict in this case on the challenged issues of intent, privilege/bad faith and damages was not.

There was ample, even substantial (even though that is not the standard under Rule 59), evidence to support the conclusion that Mr. Ramamoorthy acted with the intent and purpose tortiously to thwart PDI's efforts to sell its assets to any entity other than ProLease. As set forth in my comments on Defendants' Rule 50(b) Motion above, Defendants' assertion that a lack of evidence demonstrating Ramamoorthy's intent to thwart PDI's prospective contract with Global specifically is fatal to PDI's claim, is unavailing. The jury's determination that Ramamoorthy acted improperly and with the purpose of interfering with PDI's ability to acquire or continue prospective business or contractual relations with *any* entity other than ProLease was sufficient to satisfy the "intent" element of a claim under § 766B, and was neither clearly, decidedly nor overwhelmingly against the weight of the evidence.

Similarly, Defendants' argument regarding the lack of evidence to support the jury's rejection of their "privilege" defense turns on the propriety of the determination in this case (by Judge Chasanow and then again by me) that the parties' Letter of Intent was not dispositive on that issue. Specifically, Defendants assert "good faith" in the filing of the Maryland lawsuit must be inferred in this case as a matter of law because the Letter of Intent, if properly construed, "w[as] or might be binding" at the time the Maryland Complaint was filed. Defs.' Reply

6

at 8.  Again, this is a question of law that has been settled at the trial level of this case and Defendants' contention that it is erroneous is left to the Court of Appeals. As submitted to the jury in Instruction Nos. 3.7, 3.8 and 3.9, the question of whether Defendants had proven their affirmative defense of privilege, and the jury's determination that they had not, is supported by the evidence and does not constitute any basis for a retrial under Rule 59 standards.

### b. *The averred "procedural errors" must be viewed in context.*

A party seeking a new trial based on procedural errors that occurred during the first trial must establish those errors were both "clearly erroneous" and "prejudicial."  *Shultz v. Rice*, 809 F.2d 643, 655 (10th Cir. 1986).  The "procedural errors" identified by ProLease and Ramamoorthy in their post-trial motions include the exclusion of their experts Emil Hirsch and Derk Rasmussen over trial counsel's objection; the improper admission of Judge Chasanow's February 14, 2000 opinion granting summary judgment to PDI on ProLease's claim for specific enforcement of the Letter of Intent and *Phoenix Mutual Life Ins. v. Shady Grove Plaza Partnership*, 734 F. Supp. 1181 (D. Md. 1990); improper exclusion of Defendants' Gulf Coast Appraisal (Def. Ex. I-5); the exclusion of trial counsel's proposed rebuttal testimony; and the exclusion of Mr. Ramamoorthy's passport. Under the facts and circumstances in which they were made, none of these procedural or evidentiary rulings was erroneous.

As an initial matter, my rulings must be viewed in the context in which they

7

were made.  This litigation began with threats of litigation, and ultimately, a lawsuit, filed by ProLease as Plaintiff against PDI as Defendant.  When ProLease's claims were dismissed, the case was transferred here for proceedings on PDI's counterclaim that the actions of ProLease and its President Ramamoorthy in threatening and filing the lawsuit constituted tortious interference with PDI's prospective business advantage in selling its business to another.  Upon realignment of the parties in Colorado, we were left with the unique situation in which PDI was proceeding as Plaintiff in a lawsuit about the lawsuit originally brought against it by Defendant ProLease.

Significantly for purposes of the averred errors, the trial counsel that pursued the legal action against PDI on ProLease and Ramamoorthy's behalf now found himself in a position of defending the action on PDI's counterclaim against his clients.  To say the least, Mr. Goldschmidt's personal involvement in the activities giving rise to the tort being defended against created procedural challenges in the administration of the case.  For example, Ramamoorthy and ProLease originally relied on an advice-of-counsel defense to PDI's tortious interference claim.  When Ramamoorthy refused to answer questions about Mr. Goldschmidt's advice to him during the run-up to the Maryland Complaint on grounds of attorney-client privilege, PDI moved to compel the testimony or strike the defense.  I advised Defendants that Goldschmidt could continue as trial counsel in this case or step aside and be a material witness in support of the

defense, but he could not do both.  Ramamoorthy elected to keep Goldschmidt as trial counsel, resulting in the first of several rulings under Rule 37(b), Fed. R. Civ. P., limiting the evidence Ramamoorthy and ProLease could offer in support of their advice-of-counsel defense.  These limits specifically included the ruling that under no circumstance would Mr. Goldschmidt be allowed to testify at trial in support of the defense, on rebuttal or otherwise.

In addition to the problems caused by Mr. Goldschmidt's personal involvement in the alleged tort being tried, Defendants' overall presentation during both trial and pretrial phases of this case created additional problems that contributed to the scattered appearance of certain rulings.  I vacated the December 2004 trial date in large part because of Defendants' focus on Maryland law, a *Noerr-Pennington* defense that was misapplied in this case, and Defendants' repeated use and invocation of both in their proposed jury instructions and disputes over trial exhibits, testimony, and expert witnesses.  Lengthy and technical *Daubert* motions and motions in limine were filed on the last possible date and both sides repeatedly sought extensions of time to respond to them.  I ruled on the *Daubert* and in limine motions in November 2004, but faced at the Final Trial Preparation Conference with a mountain of exhibit objections and objections to completely unuseable jury instructions, I vacated the trial and ordered it to be reset.  The inability to proceed as scheduled was the result of obstreperousness on both sides, but primarily, in my view, on the side of Mr.

Ramamoorthy and his counsel, Mr. Goldschmidt.

After vacating the trial date, I issued rulings and new jury instructions that constituted a substantial redefinition of the issues for trial. Specifically, by Order dated January 28, 2005, I ruled that there was no cognizable *Noerr-Pennington* defense in this case and stated the proper conception of such a defense was in the nature of the generalized and qualified right to petition to be presented to the jury as an affirmative defense of privilege.[1] On March 2, 2005, I issued my proposed jury instructions, in which dispositive rulings on the applicable legal standards in this case were inherent. These rulings post-dated my rulings on the parties' original *Daubert* and in limine motions (which form the basis for some of new counsel's assertions of "procedural error") and provide important context to later rulings concerning expert evidence admissible at trial.

### c. Mr. Hirsch was Properly Excluded.

In its Opposition to Defendants' Motion for New Trial, PDI sets forth at length the nature of my rulings excluding various aspects of Mr. Hirsch's

---

[1] I note the "prosecution of civil suits" is specifically recognized as a means of "improper" interference in Restatement § 767, paragraph c (commenting on clause (a) "nature of actor's conduct"), cited in § 766B as governing the tortiousness of interference with prospective, as well as existing, contractual relationships. Maryland and Colorado law regarding the tort of intentional interference both find their source in § 766B. My elements of liability instruction, premised on the Restatement as well as the model Colorado Jury Instructions applying it, acknowledged that liability for the tortious prosecution of a civil suit must be balanced with the generalized right, or "privilege," to petition the courts for redress. Defendants' almost hyperbolic and obsessive focus on *Noerr-Pennington* caused considerable delay until I undertook to parse the defense on its merits and, ultimately, to conclude it did not apply.

testimony and I will not repeat them here.  The bottom line with respect to Mr. Hirsch was that, as the legal elements of this case were refined, his proposed "expert" legal testimony that Ramamoorthy had a "bona fide" belief in the merits of the Maryland Complaint became both legally irrelevant (Mr. Ramamoorthy's "belief" in the legal merits of his claim was a subjective inquiry of fact no longer requiring any "expertise" to ascertain) and an attempt to end run my ruling that Defendants could not offer evidence regarding Ramamoorthy's beliefs to the extent they were the result of discussions with attorneys about which he refused to provide discovery.  Additionally, Hirsch also had a previous professional relationship with Mr. Goldschmidt, having served as Mr. Goldschmidt's personal counsel, and Goldschmidt owed him money.  This created the appearance, at minimum, that Hirsch might owe continuing fiduciary obligations to Goldschmidt and a financial interest in an outcome favorable to him and his clients.  For these reasons and the additional reasons stated in Plaintiff's Opposition, the assertion of error based on the exclusion of Emil Hirsch's testimony is rejected.

### *d. Rasmussen's expert testimony was also properly excluded.*

Next, Defendants dispute the exclusion of their expert, Derk Rasmussen, from testifying as to his own opinions at trial and my ruling preventing him from rebutting certain testimony of PDI's expert TenBrook.  For the reasons offered in PDI's Opposition and as stated in the July 25, 2005 Trial Preparation Conference, I reject the contention my rulings were "clearly erroneous."  Rasmussen's

qualifications and the substance of his opinions were vetted at the July 25 conference and I excluded them for the reasons stated then. While current counsel may have argued and presented the issues differently at that conference and at trial (and would, apparently, have submitted an offer of proof based on Rasmussen's excluded testimony that trial counsel did not), the fact remains that I was persuaded Rasmussen had no admissible testimony to offer and therefore sustained PDI's objections to his presenting them.

### e. *It was not error to admit the Maryland Court opinions under the circumstances presented.*

Under the unique circumstances of this case, where the legal wrong at issue was the allegedly tortious threat and prosecution of the lawsuit itself, any charge that the admission into evidence of Judge Chasanow's opinion rejecting ProLease's original claim (as well as a counterclaim of PDI) was erroneous is rejected. The assertion of error in the admission of the *Phoenix Mutual Life* decision is similarly unavailing. Even assuming the evidentiary rulings were in error, however, Defendants cannot demonstrate the admission of either legal decision was prejudicial, and certainly not "unduly" or "overwhelmingly" prejudicial, given the explanations and limitations inherent in Instruction Nos. 3.7 and 3.8 on the defense of privilege. In relevant part, Instruction 3.8 instructed the jury that

> [t]he fact a court ultimately determines a claimed interest was not legally protected does not mean the claim was not "bona fide" under

> this standard. Because it has already been determined in this case
> that ProLease did not have a legally protected interest to purchase
> PDI under the Letter of Intent, your task in determining whether the
> claim was nevertheless "bona fide" is to assess the mindset that
> ProLease and Ramamoorthy had when they filed it. If you find they
> had an honest, or good faith, belief that they had a legally protected
> interest under the Letter of Intent for the purchase of PDI, then the
> claim was "bona fide" at the time it was filed even though it was
> ultimately rejected by the Maryland court.

Instr. No. 3.8 (defining "bona fide" belief).

### *f. Exclusion of the Gulf Coast Appraisal Ramamoorthy's Passport.*

My reasons for excluding the Gulf Coast appraisal are evident on the record and premised, in part, on the same grounds as Defendants' objection to PDI's Wanda Silva valuation opinion, which was also excluded. The exclusion of Ramamoorthy's passport, too, was an exercise of discretion that the Tenth Circuit will review, if asked, on appeal.

### *g. The jury's findings on damages warrant neither a new trial nor remittitur.*

**Actual Damages.** ProLease and Ramamoorthy contend the jury's actual damage award was "clearly, decidedly or overwhelmingly against the weight of the evidence" because PDI failed to present credible or reliable evidence of its damages. Specifically, Defendants contend TenBrook's damages calculation was "riddled with error" and "so unreliable it cannot justify the jury's award." *See* Defs.' Reply at 15. Defendants' cite numerous failures of TenBrook, including his averred failure to speak to Arthur Andersen or Grant Thornton or make "any other

attempts to verify the accuracy of [his] $5,750,000 [actual loss] figure." *Id.* at 15-16.  Because PDI "failed to meet its burden of adducing credible evidence of its actual damages . . . . actual damages should be reduced to zero, with a concomitant reduction in punitive damages [to zero] as a result of the requirement under Colorado law that punitive damages may not exceed actual damages." *Id.*

I note trial counsel made no motion to preclude TenBrook's damages opinions as unreliable during pretrial proceedings and made no evidentiary objection to those opinions or to Exhibit 50, which summarized them.  Instead, counsel cross-examined TenBrook at length, and cross-examined witnesses familiar with the events underlying the factual assumptions on which TenBrook's opinions were based, and apparently found TenBrook's opinions edifying.  Even if I disagreed with the jury's ultimate findings on damages, I would not be justified in vacating them in favor of a new trial.  *See Aspen Highlands Skiing Corp. v. Aspen Skiing Corp.*, 738 F.2d 1509, 1524, 1526 (10th Cir. 1984), *aff'd*, 472 U.S. 585 (1985)(refusing to disturb trial court's admission of expert testimony on damages and declining, on the basis of that testimony, to conclude jury's $2.5 million damage award was based on "speculation or conjecture").  "'The weight and probative value of [experts'] testimony [is] for the jury to decide.'" *Id.* (quoting *King & King Enterprises v. Champlin Petroleum Co.*, 657 F.2d 1147, 1162-63 (10th Cir. 1981)).  The burden of exploring the bases of TenBrook's calculations fell "'squarely on the shoulders of opposing counsel's cross-

examination.'" *Id.* at 1524 (quoting *Smith v. Ford Motor Co.*, 626 F.2d 784, 793 (10th Cir. 1980)). As long as there was a reasonable basis for TenBrook's actual damages calculations, the jury was entitled to consider and accept them. *Aspen Highlands* at 1524.

**Punitive Damages**. Defendants are not entitled to a new trial or remittitur for the award of punitive damages. Defendants' assertion to the contrary notwithstanding, PDI does not have to "explain how the evidence adduced at trial proved fraud, malice or willful and wanton conduct beyond a reasonable doubt" to avoid a new trial or remittitur. It is Defendants' burden, not Plaintiff's, to demonstrate the jury's findings regarding punitive damages were "clearly, decidedly or overwhelmingly against the weight of the evidence." They have failed to do so.

Under Colorado law, remittitur is allowed at the discretion of the trial court if (a) the deterrent effect has been accomplished; (b) the conduct which resulted in the award has ceased; or (c) the purpose of the damages has otherwise been served. Colo. Rev. Stat. § 13-21-102(2). It may fairly be imputed from the jury's findings based on the jury instructions not challenged by Defendants, that an award of actual damages alone would not adequately punish Ramamoorthy for the tortious conduct for which he was found liable or deter him from engaging in similar misconduct in the future. I decline to disturb the jury's award of punitive damages.

Defendants' Motion for New Trial or for Remittitur is DENIED.

                                  BY THE COURT:

Dated November 8, 2005.                **s/John L. Kane**
                                                      SENIOR U.S. DISTRICT JUDGE